Filed 5/23/14  P. v. Frisch CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOHN ANTHONY FRISCH,<br><br>    Defendant and Appellant. | B244985<br><br>(Los Angeles County<br>Super. Ct. No. MA055518) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Richard E. Naranjo, Judge.  Affirmed as modified.

Susan Morrow Maxwell, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Stephanie A. Miyoshi and Nima Razfar, Deputy Attorneys General, for Plaintiff and Respondent.

* * * * * *

1

John Anthony Frisch appeals from his conviction for receiving a stolen vehicle in violation of Penal Code section 496, subdivision (a).[1] The trial court placed appellant on three years of formal probation, with credit for time served in county jail. The trial court also ordered appellant to pay attorney fees in an amount to be determined after a financial evaluation.

On appeal, he contends that the trial court erred when it: (1) refused to allow him to authenticate a document and rendered the trial fundamentally unfair in violation of his due process rights; (2) imposed a $200 parole revocation fine after placing him on probation; and (3) ordered him to pay attorney fees without notice and a hearing. Because the People concede that the parole revocation fine was improper, we order it stricken and modify the judgment accordingly. Because a financial evaluator determined that appellant lacks the ability to pay attorney fees, he has abandoned the portion of his appeal seeking a remand for a hearing on that issue. As modified, the judgment is affirmed.

## FACTUAL BACKGROUND

**Prosecution Case**

On February 9, 2012, Karla Hernandez parked outside the 99¢ Only Store in Lancaster. She was driving a black Honda Accord which was registered to her husband Paulin Hernandez. When she came out of the store, the car was gone. Los Angeles County Deputy Sheriff Fabian Moore responded to the scene and prepared a police report.

Los Angeles County Sheriff's Detective Jeffrey Williams was "specifically tasked with any theft investigation involving metal." At approximately 2:00 p.m. on February 17, 2012, as part of his regular duties, he visited the Antelope Valley Recycling Center. He saw a black Honda Accord that was cut in half but still had the tires in place, which was indicative of a stolen vehicle. Detective Williams examined the car and discovered the vehicle identification number (VIN) was removed. In the trunk of the car, he found

---

[1] All statutory references shall be to the Penal Code unless otherwise noted.

2

an insurance card for a 1992 Honda Accord which included a VIN. The insured was listed as Paulin Hernandez, with an address in Lancaster. He performed a records check and discovered the car had been reported stolen on February 9, 2012.

Detective Williams obtained a sales receipt for the Honda Accord from the manager of the recycling center. The car had been sold to the recycling center the previous day and a copy of appellant's driver's license was attached to the receipt. Appellant told Detective Williams that he got the car from a person named "Victor" and sold it to the recycling center for scrap metal. Appellant initially said he had no bill of sale but then claimed he had. He searched for it but could not find it. Appellant was arrested and advised of his *Miranda* rights.[2]

Appellant agreed to talk and told Detective Williams that when he bought the car from Victor, the VIN was already removed. When asked by Detective Williams how he could execute a bill of sale without a VIN, appellant stated he left that portion of the form blank. Appellant claimed the recycling center told him that they would buy the car for "scrap parts" if he "cut it up into pieces." Appellant then cut the car up and sold it to the recycling center. Appellant directed Detective Williams to a residence in Lancaster where he claimed he bought the car from "Anthony" who lived at that location. Appellant stated he bought the car from both Anthony and Victor. A woman at the residence stated that she did not know anyone named Victor. She stated that her daughter's boyfriend was named Anthony but was reluctant to talk any further with Detective Williams.

Detective Williams took appellant to the police station. Appellant was searched as part of the booking process. Detective Williams found in appellant's shirt pocket the current registration for the Honda Accord, listing Paulin Hernandez. Appellant stated that he found the registration while he was cutting up the car but forgot he had it. Detective Williams continued his investigation but could not locate Anthony or Victor to ascertain their involvement in the case.

---

[2]     *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694].

On February 20, 2012, Karla Hernandez met with Detective Williams at the Antelope Valley Recycling Center. She identified her vehicle and provided Detective Williams with a key that opened the door and turned the ignition switch. Hernandez found personal items including mail containing her name and address in the trunk of the cut up Honda Accord.

**Defense Case**

On his own behalf, appellant testified that he got the car from Anthony who was the apartment manager where appellant's wife's friend lived. Appellant knew Anthony for approximately two years but did not know his last name. Anthony performed computer work for appellant's wife and in exchange appellant worked on Anthony's vehicles. Anthony and his cousin Victor helped appellant load the Honda Accord onto a trailer to take to the recycling center. The car was "pretty much a shell" and the engine, transmission, window glass, and doors were missing. Appellant could not find the car's VIN. Appellant was informed by the recycling center that the car could not be purchased as a whole vehicle without the VIN. Appellant went back to Anthony's house but was unable to find him. Appellant realized he had a "major problem" because he was "stuck with a car and no way to get a hold of [Anthony]." Appellant cut the car up into pieces and sold it to the recycling center for $161. At the recycling center, some papers and debris fell out of the trunk of the Honda Accord as it was lifted from the trailer. Appellant picked up the registration card and put it in his pocket but did not read it. Appellant denied telling Detective Williams that he found the registration while cutting up the car.

## DISCUSSION

### I. Authentication Issue

Appellant contends he was denied due process when the trial court refused to

allow him to authenticate a purported "DMV document"[3] critical to his defense.

### A. *Proceedings Below*

After the prosecution rested its case, the trial court conducted an Evidence Code section 402 hearing to determine the admissibility of a form that purportedly demonstrated that "Victor Sanchez" (whose driver's license and telephone numbers were listed) sold the car to appellant. Defense counsel explained that he did not turn over the form as part of the discovery process because he was not seeking to "introduce" it. He turned it over late because appellant decided to testify and would mention the form during his testimony. Defense counsel wanted to avoid the "dramatic situation" that would occur if the prosecution asked about the form and appellant said "Well, I have it here." The prosecution stated that it had received an uncertified and "unsubstantiated" "photocopy" of what appeared to be a two-page DMV "miscellaneous statement of facts form." The prosecution did not have sufficient time to verify the form and fully investigate its contents but was able to determine that the driver's license number "did not come back to anyone named Victor Sanchez, and [the] phone number [was] not a working phone number." Defense counsel argued that the form would be properly authenticated "if [appellant] were to testify, I saw a person fill it out at such and such a date and time." The court stated the form was hearsay because it was "an out-of-court writing" that was being offered to substantiate appellant's defense and "Victor Sanchez" was not present to be cross-examined. Defense counsel responded that appellant would testify that he filled out the form and Sanchez signed it and stated the form would not be offered for the truth but to explain the purpose of the transaction. The court reiterated that it was still "hearsay" and that appellant should not have the original because "if anything, it would have been filed with the DMV." The court expressed its skepticism

---

[3]     The document was before the trial court but was not received in evidence as an exhibit. From the record it appears to be a photocopy of a two-page form containing information regarding vehicle transfers.

5

about the authenticity of the form stating it was "convenient" that appellant still had it. The court clarified the hearsay problem stating that Sanchez who was integral to the form was unavailable to be cross-examined. The court stated the form was "self-serving hearsay from [appellant]" unless Sanchez "were to come testify, prove his identity, identify [appellant] being the one he sold the car to" and confirm he signed the form. The court stated there was no foundation for the form and it would not be allowed into evidence as an exhibit but appellant would not be prevented from showing it.

After a brief recess the court addressed the issue again, adding: "The problems I have with the form, as far as being allowed to show this to the jury, is that it is inherently unreliable just in its very nature. This is a document allegedly created by [appellant] at the time of this transfer of possession of this vehicle to somebody whose signature is on here, but yet can't be verified because that person is not here, and the license number that was given is not a license number to that name." Defense counsel asked whether appellant could mention the form during his testimony. The court stated that appellant could testify however he wanted to in front of the jury but the form would not be admitted into evidence. In the event appellant testified he had the form, the court stated it would instruct the jury that the form did not "satisfy the foundational elements" and "couldn't be used."

### B.    *Applicable Legal Standards*

A writing is not admissible unless it is authenticated. (Evid. Code, § 1401, subd. (a).) "Authentication of a writing means (a) the introduction of evidence sufficient to sustain a finding that it is the writing that the proponent of the evidence claims it is or (b) the establishment of such facts by any other means provided by law." (Evid. Code, § 1400.) The Evidence Code provides several non-exclusive means to authenticate a handwritten document, including testimony by the maker of the writing or a witness who

6

saw the writing made or executed (Evid. Code, § 1413).[4]

### C. Analysis

Appellant sought to authenticate the form under Evidence Code section 1413, by testifying that he wrote it. The trial court erred by failing to allow appellant to do so. "Although writings must be authenticated before they are received into evidence or before secondary evidence of their contents may be received [citation], a document is authenticated when sufficient evidence has been produced to sustain a finding that the document is what it purports to be [citation]. As long as the evidence would support a finding of authenticity, the writing is admissible. The fact conflicting inferences can be drawn regarding authenticity goes to the document's weight as evidence, not its admissibility. [Citations.]" (*Jazayeri v. Mao* (2009) 174 Cal.App.4th 301, 321.) It was the role of the trier of fact, in this case the jury, to determine if it was in fact a form that appellant created when he obtained the car from Sanchez, or if appellant created it to disguise his culpability. (*Ibid.)*

The proffered form should not have been excluded as inadmissible hearsay. Appellant offered the form not for the truth of the matter asserted, that is, that appellant purchased the car from Sanchez and had no knowledge that the car was stolen but rather that there was a form which appellant filled out and Sanchez signed. Writings not offered for the truth of the matter asserted are, by definition, not hearsay. Hearsay is defined in Evidence Code section 1200 as "evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated." Where "'the very fact in controversy is whether certain things were said or done and not . . . whether these things were true or false, . . . in these cases the words or acts

---

[4] Other means of authentication include an admission of the authenticity of the document by the party against who it is offered (Evid. Code, § 1414), evidence of the genuineness of the handwriting of the maker (Evid. Code, § 1415), testimony by a person familiar with the handwriting of the supposed writer (Evid. Code, § 1416), and comparison of the handwriting of an authenticated document with the offered document by the trier of fact (Evid. Code, § 1417) or an expert (Evid. Code, § 1418).

are admissible not as hearsay[,] but as original evidence.'" (1 Witkin, Cal.Evidence (4th ed. 2000) Hearsay, § 31, p. 714, quoting *People v. Henry* (1948) 86 Cal.App.2d 785, 789.) For example, documents containing operative facts, such as the words forming an agreement, are not hearsay. (*People v. Jimenez* (1995) 38 Cal.App.4th 795, 802.)

Having considered the record at hand, we find the trial court's error in not allowing appellant to authenticate the form was harmless because it is not reasonably probable a result more favorable to defendant would have occurred absent the error. (*People v. Watson* (1956) 46 Cal.2d 818, 836.) The trial court ruled that the form would not be admitted into evidence but placed no limits on appellant's testimony. Appellant testified in his own defense and explained why he cut up the car into pieces. Appellant testified that he was unable to obtain "[t]he original owner's signature on some other paperwork" in order to get a junk slip required by the recycling center. Appellant stated he did not have that paperwork because it was not his intention "to transfer the vehicle." Furthermore, overwhelming evidence supported appellant's guilt. Appellant possessed a car that had been reported stolen just days before. He admitted he sold the car to the recycling center but was unable to produce any paperwork showing ownership. Appellant searched unsuccessfully for documentation related to the stolen vehicle but did not disclose he possessed the current registration for the vehicle until it was discovered in his shirt pocket during the booking process. Moreover, had appellant introduced the form into evidence, the prosecution's attack on its authenticity would have weakened appellant's defense. Appellant did not disclose the existence of the form during discovery and waited until he was about to testify; the information related to Sanchez could not be verified; the driver's license number was false and a non-working telephone number was listed; and Sanchez was unavailable to testify.

## II. The Parole Revocation Fine Must Be Stricken

The trial court imposed a $200 parole revocation fine pursuant to section 1202.45, which was stayed pending successful completion of parole. The People concede, and we agree, that because appellant was sentenced to formal probation, his sentence does not include a period of parole. Therefore, no parole revocation fine could be imposed. (*People v. Smith* (2001) 24 Cal.4th 849, 853.) Accordingly, that portion of the court's judgment imposing a parole revocation fine shall be stricken.

## III. Attorney Fee Determination Issue is Moot

After a trial where a criminal defendant has been provided a public defender, the court may order the defendant to pay all or some of his defense costs, but only upon notice and a hearing to determine the defendant's ability to pay. (§ 987.8, subd. (b).)

At appellant's sentencing hearing, the trial court ordered appellant to report to "the Financial Evaluator" on or before November 15, 2012.

On December 9, 2013, this court took judicial notice of the Los Angeles County Superior Court's Financial Evaluation Officer's Recommendation dated November 15, 2012. The evaluator determined that appellant "did not have the ability to pay the cost of his [] legal assistance."

Appellant no longer requests remand to the trial court for a determination of appellant's ability to pay attorney fees. In view of the foregoing, the issue is moot.

### DISPOSITION

The judgment is modified as follows: The parole revocation fine of $200 is stricken. The trial court is directed to amend the abstract of judgment to reflect this modification and to forward certified copies of the amended abstracts to the Department

of Corrections and Rehabilitation.  (Pen. Code, §§ 1213, 1216.)  The judgment is affirmed as modified.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, J. *

FERNS

I concur:


_____, J.

CHAVEZ

*     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

ASHMANN-GERST, J., Concurring.


I concur in the judgment but write separately, as I conclude that the trial court properly excluded the DMV form and did not commit error.

During colloquy with the trial court, defense counsel suggested that appellant would testify that he filled out a DMV form entitled Miscellaneous Statement of Facts, then Victor Sanchez signed the form in appellant's presence and sold him the car. Deeming it discovery, defense counsel gave a copy of the form to the prosecutor. Defense counsel, however, did not intend to have it admitted into evidence. Nonetheless, the prosecutor objected to the form, which prompted the trial court to hold an Evidence Code section 402 hearing. There was no verbal summary by defense counsel regarding the contents of the form. When the trial court opined that the DMV form was inadmissible hearsay because appellant would use it to substantiate his defense, defense counsel stated that he would not be introducing it for the truth of the matter asserted, but rather for "explaining what the document was, and the purpose that it served in whatever transaction . . . he engaged in." The trial court excluded the form on the grounds that it was inadmissible hearsay, and also that it was not properly authenticated by Victor Sanchez.

According to appellant, the trial court erred. In his opening brief, he ignores the hearsay issue, focusing instead on authentication. Only in his reply brief does he refute that the DMV form was hearsay. But he does not argue that it was offered for a relevant non-hearsay purpose, nor does he cite any law to support his tacit contention that offering the form to prove what the document was as well as to prove "the purpose that it served in whatever transaction" does not qualify as offering it to prove the truth of the matter asserted expressly or impliedly. "'When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point

1

as waived.  [Citations.]'"  (*Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857, 862.)

Beyond the waiver, there is another problem.  Though the record indicates that the trial court reviewed the DMV form, the substance of the form was not verbalized on the record.  Thus, we have no ability to evaluate the nature of the evidence or it uses and relevance.  (*Magic Kitchen LLC v. Good Things Internat., Ltd.* (2007) 153 Cal.App.4th 1144, 1164–1165 ["plaintiffs have not . . . given this court any information about the substance of the documents . . . that would allow us to conclude that their exclusion was erroneous"].)

Focusing directly on the hearsay issue, hearsay "is evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the  matter stated."  (Evid. Code, § 1200, subd. (a).)  Included within the rubric is "the truth of a matter that is stated in such statement by implication." (*People v. Allen* (1976) 65 Cal.App.3d 426, 433.)  "Except as provided by law, hearsay evidence is inadmissible."  (Evid. Code, § 1200, subd. (b).)

The question is whether offering the DMV form to explain what the document was, and the purpose that it served in a transaction, qualifies as offering it to prove the truth of the matter asserted.  Perhaps offering the form to explain that it was a document that was signed by Victor Sanchez should be properly labeled as a nonhearsay use.  But the DMV form was inadmissible unless it was relevant to appellant's defense, i.e., it showed that he purchased the car in good faith and did not know that it was stolen.[1] (*People v. Lucero* (1998) 64 Cal.App.4th 1107, 1109 [a statement was "irrelevant for the

---

[1]    Penal Code section 496, subdivision (a) provides, in part, "Every person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained, shall be punished by imprisonment in a county jail for not more than one year, or imprisonment pursuant to subdivision (h) of Section 1170."

2

nonhearsay purpose offered because it had no tendency in reason to prove any disputed issue of fact in the action"]; Evid. Code, § 350 ["No evidence is admissible except relevant evidence"].)  That Victor Sanchez signed a DMV form, by itself, had no tendency in reason to prove a disputed fact.  Thus, the trial court appropriately concluded that the only relevant reason the DMV form was being offered was to prove that appellant purchased the car in good faith and did not know that the car was stolen.  In my view, that was a hearsay purpose because appellant was attempting to prove a fact asserted or implied in the form tending to prove his defense.  As a result, the DMV form was inadmissible.  (See *Pacific Gas & E. Co. v. G.W. Thomas Drayage Etc.* (1968) 69 Cal.2d 33, 42–43 ["Since invoices, bills, and receipts for repairs are hearsay, they are inadmissible independently to prove that liability for the repairs was incurred, that payment was made, or that the charges were reasonable"].)



_____, Acting P. J.

3